IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 05-30241 |
| | | (Chapter 13) |
| EDWARD L. & CASSANDRA D. KRENEK | § | |
| | § | |
| DEBTORS | | |
| | § | |

## MEMORANDUM OPINION ON THE DEBTORS' MOTION TO VACATE PAY ORDER AND RECOVER ATTORNEY'S FEES (DOCKET NO. 42)

### I. INTRODUCTION

On August 23, 2005, this Court held a hearing on Edward L. and Cassandra D. Krenek's Motion to Vacate Pay Order and Recover Attorney's Fees (the Motion to Vacate). This hearing was continued to October 4, 2005 and then until October 18, 2005 and again until October 25, 2005, at which time this Court made oral findings of fact and conclusions of law from the bench. This Memorandum Opinion memorializes those findings and conclusions and makes additional findings and conclusions.

### II. PROCEDURAL HISTORY OF THIS CASE

The procedural history of this case is as follows:[1]

1. On January 3, 2005, Edward L. and Cassandra D. Krenek (the Debtors) voluntarily filed a Chapter 13 petition, together with their Schedules and Statement of Financial Affairs. (Docket No. 1). The attorney who filed the petition was J. Todd Malaise of the Law Firm of Malaise & Davis, L.L.P. (hereinafter sometimes jointly and severally referred to as the

---

[1] This procedural history also contains certain findings of fact in addition to the findings of fact set forth in Section III of this Memorandum Opinion.

1

       Malaise Law Firm).

2.    On April 29, 2005, the Chapter 13 Trustee (the Trustee) filed a Motion to Dismiss (the Motion to Dismiss) because, among other reasons, the Debtors had not yet filed their federal income tax returns for 2002, 2003, and 2004. (Docket No. 21).

3.    On May 23, 2005, this Court signed an order of dismissal with prejudice to refiling for 180 days (Order of Dismissal). (Docket No. 27).

4.    On June 23, 2005, Esther Gonzales, an associate attorney at the Malaise Law Firm, filed a pleading entitled "Debtors' Attorney's Motion for Allowance of Section 503(b) Claim." (Docket No. 31). This Motion requested the Court to award an administrative claim to the Malaise Law Firm in the amount of $2,060.00 for the services rendered by this firm on behalf of the Debtors. The Malaise Law Firm would look to the Chapter 13 Trustee for payment, in whole or in part, as the Trustee was holding some funds paid by the Debtors at the time their case was dismissed.

5.    On July 26, 2005, this Court signed an Order Allowing Chapter 13 Attorney's Fees in a Dismissed or a Converted Case Pursuant to Section 503(b) (Order Allowing Attorney's Fees) in the amount of $1,800.00 in favor of the Malaise Law Firm. (Docket No. 32). The Court reduced the requested amount of $2,060.00 to $1,800.00 because under General Order 2004-5, if a chapter 13 case is dismissed without a plan having been confirmed, the maximum amount of fees awarded to the debtors' counsel is $1,800.00–and this Court saw no reason why the Malaise Law Firm should be entitled to more than this amount given the results in this case.

6.    On July 29, 2005, the Debtors filed an Emergency Motion for Reconsideration and to Reopen Chapter 13 Case and for Expedited Emergency Hearing (Docket Nos. 34 and 36) (the Motion for Reconsideration). On even date, one of the Debtors, Cassandra Krenek (Ms. Krenek),

2

filed an affidavit setting forth why the Debtors had not filed their 2002, 2003, and 2004 tax returns with the Court; why she had not attended the dismissal hearing; that her husband and she had by that time filed their tax returns; and that they were facing foreclosure and loss of their house. (Docket No. 34). The Motion for Reconsideration itself noted that the Debtors had approximately $30,000.00 equity in their homestead.

7. In her July 29, 2005 affidavit, Ms. Krenek stated that "I wanted to attend the dismissal hearing, and if I had attended I would have explained to the Court what had happened with the Certified Public Accountant and that I had not been told about the need for amendment to the schedules. But I received advice from my then attorney's office that I didn't need to go to the dismissal hearing and that it wouldn't make any difference if I did."

8. This Court set an emergency hearing on the Motion for Reconsideration for August 1, 2005 at 4:30 p.m., and the attorney who filed this motion for the Debtors–Ms. Gillian Richards, a solo practitioner who had taken over representation of the Debtors–was ordered to send out a Notice of Hearing. Ms. Richards timely sent such a notice. (Docket No. 38).

9. On August 1, 2005, a hearing was held on the Motion for Reconsideration. The Court granted this motion and signed an order to that effect. (Docket No. 40). This order vacated the dismissal order that this Court had signed on May 23, 2005 (Docket No. 27) dismissing this Chapter 13 case with prejudice.

10. On August 4, 2005, Ms. Richards, on behalf of the Debtors, filed a Motion to Vacate Pay Order and Recover Attorney's Fees (the Motion to Vacate) (Docket No. 42). In this motion, the Debtors requested this Court to vacate the Order that this Court signed on July 26, 2005 awarding an administrative claim of $1,800.00 to the Malaise Law Firm (Docket No. 32).

11. On August 23, 2005, this Court held a hearing on the Motion to Vacate. This hearing was continued until October 4, 2005.

3

12. On October 4, 2005, this Court held a hearing during which the Court heard testimony concerning the representation of the Debtors by the Malaise Law Firm, and in particular by an associate attorney at this firm's Houston office, Esther Gonzalez (Ms. Gonzalez), and by a legal assistant supervised by Ms. Gonzalez, Susan Martinez (Ms. Martinez). At this hearing, testimony was given by Ms. Krenek and Ms. Martinez. Ms. Krenek testified that the Debtors' tax preparer told them she could not accurately prepare the 2001-2004 returns until the Internal Revenue Service sent her a copy of the 2000 return. (10:11:08).[2] Ms. Krenek further testified that until the day prior to the dismissal hearing, she was unaware that the Debtors' bankruptcy case was going to be dismissed for failure to provide tax returns. (10:07:25). Finally, Ms. Krenek also testified that after the Debtors were informed that their case was dismissed for failure to provide tax returns, the Debtors found another preparer who was able to prepare the tax returns without a copy of the 2000 return. (10:16:26). The October 4, 2005 hearing was continued until October 18, 2005 to allow Ms. Martinez to produce her notes related to the Debtors' file.

13. At the October 18, 2005 hearing, Ms. Martinez produced the her notes and gave further testimony. The Court continued this hearing until October 25, 2005 to allow Ms. Gonzalez to produce her notes related to the Debtors' file. Ms. Gonzalez was also ordered to produce all written policies of the Malaise Law Firm with respect to its legal assistants as well as all training manuals for such legal assistants.

14. At the October 25, 2005 hearing, Ms. Gonzalez produced her notes and also gave testimony; however, Ms. Gonzalez did not produce any written policies or procedures of the Malaise Law Firm with respect to the duties and training of legal assistants

15. On October 25, 2005, after listening to additional testimony by Ms. Martinez and Ms. Krenek

---

[2] This number represents the hour, minute, and second on October 4, 2005 when Ms. Krenek gave this testimony. These numbers appear on the computer screen when listening to the recording of the hearing.

4

and closing arguments of counsel, this Court made certain oral findings of fact and conclusions of law on the record, which are set forth below. Also set forth below are additional findings of fact and conclusions of law which this Court has made after further reflection and after listening to the tapes of the hearings.

### III. FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as adduced from testimony by the witnesses or through introduction of exhibits at the hearings, in chronological order, are as follows:

1. The Debtors filed a Chapter 13 petition on January 3, 2005 and no plan has been confirmed.

2. J. Todd Malaise was initially counsel of record for the Debtors.

3. The two individuals at the Malaise Law Firm who provided services to the Debtors were Ms. Martinez, a legal assistant, and Ms. Gonzalez, an attorney at law. Both of these individuals work in the Houston office of the Malaise Law Firm; the principal office of this firm is located in San Antonio, Texas.

4. Ms. Gonzalez graduated from law school in 1999, but has not been practicing bankruptcy law for six years. Rather, she has been practicing bankruptcy law for approximately two years. Ms. Gonzalez is an associate at the Malaise Law Firm.

5. Ms. Gonzalez supervises three legal assistants at the Houston office of the Malaise Law Firm. All of the partners at the Malaise Law Firm reside and have their offices in San Antonio. Therefore, as a practical matter, the Malaise Law Firm has a two year associate in charge of the Houston practice and three legal assistants.

6. In this particular case, Ms. Gonzalez' communications with the Debtors took place at an initial conference with the Debtors, and at the first meeting of creditors. Virtually all other communications between the Debtors and the Malaise Law Firm were through Ms. Martinez, the legal assistant.

7. After the Motion to Dismiss was filed, the Debtors were able to communicate with Ms. Martinez, but not with Ms. Gonzalez. No attorney with the Malaise Law Firm ever met face-to-face with the Debtors to explain to them the seriousness of the consequences of their case being dismissed. Further, no attorney at the Malaise Law Firm informed the Debtors that they absolutely should attend the hearing on the Motion to Dismiss so as to allow this Court to listen to any explanation that they might wish to give regarding why their tax returns were delinquent. No attorney at the Malaise Law Firm explained to the Debtors that before this Court makes a decision as to whether to dismiss a case, this Court is willing, and has a duty, to listen to any evidence that the Debtors want to submit as to why their case should not be dismissed.

8. Ms. Martinez, the legal assistant, did in fact communicate with Ms. Krenek about the hearing on the Motion to Dismiss. Specifically, Ms. Martinez told Ms. Krenek that the Debtors did not need to attend the dismissal hearing and that if they did attend such hearing, "it would do. . .[the Debtors] no good, the. . . [Court] would not listen to any excuses." (October 4, 2005 Hearing at 10:08:29).

9. Based upon the statements that Ms. Martinez made to Ms. Krenek, the Debtors did not attend the hearing on the Motion to Dismiss.

10. Ms. Gonzalez shielded herself from the Debtors based upon the culture of the Malaise Law Firm. The Debtors were not singled out as particular clients to whom Ms. Gonzalez would not speak when one of them called. Rather, that it has been the practice of the Malaise Law Firm for the receptionist to forward all client phone calls to a legal assistant unless Ms.

Gonzalez has expressly noted in the electronic file system to forward a particular client's call to her.

11. As a result of the Debtors' inability to communicate with Ms. Gonzalez, they were not informed that a dismissal hearing is a very important hearing that they must attend; they were not informed of the serious consequences of failing to appear at the hearing; and they were not informed what their rights would be if the case was dismissed with prejudice. Rather, the Debtors were misinformed because Ms. Martinez told them that after dismissal, if they simply filed their tax returns, they could re-file their Chapter 13 petition. (October 18, 2005 Hearing at 9:20:06 and 9:20:41). This representation was absolutely incorrect based upon the Order of Dismissal which this Court signed on May 23, 2005 (Docket No. 27); the Order of Dismissal was with prejudice for 180 days and it did not provide for any contingencies.

12. The Malaise Law Firm in general, and Ms. Gonzalez in particular, rely too heavily on legal assistants to communicate with clients.

13. Because the Debtors were not told that they should definitely appear at the hearing on the Motion to Dismiss, the Debtors failed to appear; and because the Debtors failed to appear, this Court dismissed their case with prejudice. The dismissal with prejudice was expressly due to the failure of the Debtors to appear at the hearing and explain to this Court why they had not filed their tax returns.

14. This Court signed the Order Allowing Attorney's Fees because the Motion for Allowance of Section 503(b) Claim was properly filed and this Court was unaware of the reasons that the Debtors failed to appear at the hearing on the Motion to Dismiss. If this Court had been aware of these reasons, this Court would not have signed the Order Allowing Attorney's Fees.

15. As a result of their case being dismissed with prejudice, the Debtors had to retain new

counsel, Ms. Richards, to obtain a vacating of the Order of Dismissal. Further, in the wake of this Court vacating the Order of Dismissal, the Debtors want, and are entitled, to prosecute this Chapter 13 case; and in so prosecuting, the Debtors need to have as many funds as possible in the hands of the Trustee for distribution to creditors. Accordingly, the Debtors appropriately instructed Ms. Richards to file the Motion to Vacate so that the Trustee would pay no fees to J. Todd Malaise or the Malaise Law Firm. The attorney's fees incurred by the Debtors in having Ms. Richards prosecute the Motion to Vacate totaled $3,800.00. This figure is derived by multiplying Ms. Richards' hourly rate of $200.00 times 19 hours, which is the amount of time she has spent prosecuting the Motion to Vacate.

### IV. CONCLUSIONS OF LAW

**A.  Jurisdiction and Venue**

This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (b)(2)(B) and (b)(2)(O). The Motion to Vacate is a contested matter pursuant to Bankruptcy Rule 9014. Venue of this Chapter 13 case in this district is proper pursuant to 28 U.S.C. 1408(1).

**B.  This Court will grant the relief sought by the Debtors, and vacate the Order Allowing Attorney's Fees.**

Bankruptcy courts have inherent powers to regulate the conduct of the attorneys who appear in their courtroom. *Chambers v. Nasco*, 501 U.S. 32, 44 – 46 (1991). This Court further may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. §105(a).

The Debtors have requested this Court to vacate the Order Allowing Attorney's Fees. The Court will grant this relief because the Malaise Law Firm failed to provide the requisite legal counseling to the Debtors with respect to the Motion to Dismiss. It is completely unacceptable to this Court that a legal assistant told the Debtors that they need not bother to attend the dismissal hearing because this Court will not listen to them. It is equally unacceptable to this Court that no

attorney at the Malaise Law Firm communicated with the Debtors about the Motion to Dismiss, the seriousness of the situation, and the consequences of a dismissal of their case, particularly a dismissal with prejudice.

When she testified, Ms. Martinez contradicted Ms. Krenek by stating that she never told Ms. Krenek not to attend the hearing because this Court would not listen to her. This Court listened and observed both Ms. Krenek and Ms. Martinez while they testified, and this Court believes that Ms. Krenek has testified truthfully. However, even if this Court were to completely believe Ms. Martinez, neither she nor the Malaise Law Firm would be exonerated. Ms. Martinez's own time entries on May 19, 2005–which were introduced as an exhibit at the hearing–reflect that she had a telephone call with Ms. Krenek and, to quote verbatim from Ms. Martinez's notes, "told her that they could be at hrg [i.e. the hearing on the Motion to Dismiss] if they wanted to or if opposed to the dismissal. . ." This is *not* the message that this Court believes a legal assistant should be conveying to these Debtors—or any other debtors—about a hearing concerning the dismissal of their case, particularly when that dismissal may well lead to foreclosure on a homestead with substantial equity. Rather, the message that needs to be conveyed under such circumstances is that these Debtors—and any debtors whose case is up for dismissal—must attend the hearing; that there is no excuse for not attending the hearing; that this Court will listen to any debtor before making a decision; that the Debtors had the right to explain to this Court why their tax returns had not been completed; and that the Debtors should be prepared to review with the Court all other facts and circumstances that support keeping their case on the docket, including the amount of equity in the homestead. Moreover, this message needs to come from an attorney, not a legal assistant, so as to impress upon the Debtors the importance of their presence in the courtroom and so the Debtors can receive legal advice should they have questions.

The culture of the Malaise Law Firm worked against such a message being delivered to the Debtors by an attorney–in this case by Ms. Gonzalez. The business model of the Malaise Law Firm appears to be one where an attorney initially meets with the prospective client in the hope of having this individual sign an engagement letter and retain the firm, and thereafter legal assistants handle most of the communications while the attorney shields herself from further meetings with the client. Such an approach may well maximize the client base–and therefore the revenues—for the firm, but

it reduces the quality of representation to each of the clients. Such a model imposes an inappropriate limitation on a debtor's ability to communicate with his/her attorney. Indeed, this model might improperly be promoting the practice of law by legal assistants. When Ms. Martinez informed Ms. Krenek that her husband and she could refile their case once their tax returns were completed, was she not giving legal advice to Ms. Krenek? *See, e.g., In re McDaniel*, 232 B.R. 674, 679 (Bankr. N.D. Tex. 1999) ("Mr. Murphy's paralegal training does not give him a license to practice law. His advice resulted in the Debtors committing a criminal offense of knowingly omitting a creditor from their bankruptcy schedules."); *In re Stacy*, 193 B.R. 31, 39 (Bankr. D. Ore. 1996).[3]

The irony in this case is that Ms. Gonzalez herself attended the hearing on the Motion to Dismiss. If only she had picked up the phone and spoken with Ms. Krenek and/or her husband, and emphasized to them that they most definitely needed to attend the hearing and that this Court would indeed listen to them, the Debtors would have attended the hearing and this Court would not have dismissed this case. Instead, Ms. Gonzalez simply avoided the Debtors, attended the hearing, and then informed Ms. Martinez that the case had been dismissed with prejudice. Ms. Gonzalez then left it to Ms. Martinez to give the bad news to the Debtors. Is it any wonder that the Debtors became upset with the Malaise Law Firm?

The Debtors' unhappiness is justified. Accordingly, pursuant to this Court's power to regulate the conduct of attorneys who appear in its Court, as articulated in *Chambers v. Nasco*, 501 U.S. 32, 44 - 46 (1991) or, in the alternative, pursuant to this Court's equitable powers under 11 U.S.C. §105(a), this Court believes, and so holds, that the Malaise Law Firm should receive no compensation for the services that it rendered to the Debtors in this Chapter 13 case. Not only did the Malaise Law Firm provide no benefit to the Debtors or their estate; this firm shirked its responsibilities to the Debtors by failing to have an attorney—as opposed to a legal assistant—meet with them to emphasize the importance of attending the hearing on the Motion to Dismiss.

---

[3] While Ms. Martinez testified in Court that she told the Debtors that they could file another Chapter 13 petition once their tax returns were completed, her notes from the file reflect that she qualified this statement by telling them that they could not refile if their case "gets dismissed with prejudice." Assuming that her notes are accurate, she apparently failed to sufficiently explain to Ms. Krenek what the consequences were of a dismissal with prejudice. If Mr. Krenek had understood such consequences, her husband and she would have attended the hearing. Ms. Martinez's failure to adequately explain the concept of dismissal with prejudice underscores the need for an attorney to have communicated with the Debtors.

Ultimately, the services provided by the Malaise Law Firm harmed, not benefitted, the Debtors. Accordingly, this Court will enter an order vacating the Order Allowing Attorney's Fees.

Additionally, pursuant to these same powers, this Court will enter an Order requiring J. Todd Malaise and the Malaise Law Firm to pay the sum of $3,850.00 to the Debtors' new counsel, Gillian Richards, for her prosecution of the Motion to Vacate. Of this amount, $3,800.00 represents fees and $50.00 represents expenses. Ms. Richards' services have benefitted the Debtors and their estate by ensuring that the Chapter 13 Trustee will be distributing no monies to the Malaise Law Firm and will be distributing monies that otherwise would have gone to the Malaise Law Firm to deserving claimants. The $3,800.00 fee is appropriate based on Ms. Richards' hourly rate of $200.00, which is very reasonable given the experience that she has, given the efficient and professional manner in which she has prosecuted the Motion to Vacate, and given the successful result that she has obtained. The amount of time spent is also reasonable given the fact that there have been four hearings on the Motion to Vacate and that the Malaise Law Firm has vigorously opposed the Motion to Vacate. All in all, the attorney's fees of $3,800.00 are reasonable, as are the expenses of $50.00, which concerned items such as copying costs and postage.

## V. CONCLUSION

The Malaise Law Firm bears the consequences of its present business model and lack of proper supervision of associates and legal assistants. The Court hopes that this firm changes its approach to representation of consumer debtors. Simultaneously with the entry on the docket of this Memorandum Opinion, this Court will enter an Order that:

1. Vacates this Court's Order of July 26, 2005 Allowing Chapter 13 Attorney's Fees (Docket No. 32) in the amount of $1,800.00 in favor of the Malaise Law Firm; and

2. Requires J. Todd Malaise and Malaise & Davis, L.L.P., jointly and severally, to pay directly to Gillian Richards the amount of $3,800.00 for attorney's fees and $50.00 for expenses, for a total amount of $3,850.00, for her prosecution of the Debtors'

Motion to Vacate Pay Order and Recover Attorney's Fees (Docket No. 42).

This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated into contested matters in bankruptcy cases by Federal Rules of Bankruptcy Procedure 7052 and 9014. A separate order will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed the 7th day of December, 2005.

Jeff Bohm
U.S. Bankruptcy Judge

cc: (1) Gillian Richards
via telecopy (713) 984-2337

    (2) J. Todd Malaise
via telecopy (210) 732-5826

    (3) Esther Gonzalez
via telecopy (713) 782-7451

    (4) David G. Peake, Chapter 13 Trustee
via telecopy (713) 852-9084